AO 106 (Rev. 04/10) Application for a Search Warrant (Modified: WAWD 10-26-18)

# UNITED STATES DISTRICT COURT
for the
Western District of Washington

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
One Samsung cellular phone in the custody of the ) Case No. MJ20-026
U.S. Border Patrol, more fully described in )
Attachment A )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
One Samsung cellular phone in the custody of Border Patrol, more fully described in Attachment A, incorporated by reference.

located in the ____Western____ District of ____Washington____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 U.S.C. § 1324 | Alien Smuggling |

The application is based on these facts:
✓ See Affidavit of Border Patrol Agent Reese W. Osburn, continued on the attached sheet.

☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Pursuant to Fed. R. Crim. P. 4.1, this warrant is presented: ☑ by reliable electronic means; or: ☐ telephonically recorded.

*Applicant's signature*

Reese Osburn, Border Patrol Agent
*Printed name and title*

○ The foregoing affidavit was sworn to before me and signed in my presence, or
◉ The above-named agent provided a sworn statement attesting to the truth of the foregoing affidavit by telephone.

Date: __01/22/2020__

*Judge's signature*

City and state: Seattle, Washington      Brian A. Tsuchida, Chief United States Magistrate Judge
*Printed name and title*

USAO: 2019R01254

**AFFIDAVIT**

STATE OF WASHINGTON    )
                       )
COUNTY OF WHATCOM      )

I, Reese W. Osburn, being first duly sworn, depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I am employed as an agent with United States Border Patrol, Custom and Border Protection, and I am currently assigned to the Blaine Sector Prosecution Unit. I have been a Border Patrol Agent for eighteen years. As a Border Patrol Agent, I am responsible for conducting criminal investigations regarding the violation of immigration and customs laws of the United States. In July 2002, I completed the Border Patrol Agent training program at the Federal Law Enforcement Training Center in Charleston, South Carolina. This training included instruction related to immigration law as well as basic criminal investigations involving narcotics and human smuggling, interview techniques, evidence gathering, and surveillance.

2. By virtue of my employment as a Border Patrol Agent I have performed the following law enforcement activities: functioning as a surveillance agent, observing and recording movements of persons trafficking in drugs and/or those engaged in human trafficking; interviewing witnesses; and functioning as a case agent, which entails the supervision of investigations involving the trafficking of drugs, and illegal aliens. Before coming to the Blaine sector, I worked for 16 years on the southern border at a checkpoint station. In my work on the southern border, I routinely encountered both alien smuggling and narcotic smuggling cases and was required to conduct interviews of smugglers and potential material witnesses. I have consulted with other experienced investigators concerning the practices of drug and alien traffickers and the best methods of investigating them. Based on my training, experience, and conversations with other experienced investigators, I have gained insight into the techniques and methods used by smugglers to illegally transport aliens, their use of cellular phones and other electronic

AFFIDAVIT OF BPA Osburn - 1
USAO #2019R01254

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

communication devices to facilitate their smuggling activity, and the methods used to conceal that activity.

3. The facts set forth in this Affidavit are based on my own personal knowledge; information obtained from other individuals during my participation in this investigation, including other law enforcement officers; review of documents and records related to this investigation; communications with others who have personal knowledge of the events and circumstances described herein; and information gained through my training and experience.

## PURPOSE OF AFFIDAVIT

4. This affidavit is submitted in support of an application for a search warrant pursuant to Federal Rule of Criminal Procedure 41 to search a cellular telephone, described below, and more particularly described in Attachment A:

   a. One black Samsung smartphone, found in the vehicle driven by BALJIT SINGH NIJJAR at the time of his arrest on December 19, 2019 (the "SUBJECT PHONE").

5. The warrant would authorize the forensic examination of the SUBJECT PHONE for the purpose of identifying electronically stored data particularly described in Attachment B. The SUBJECT PHONE is currently in the possession of the United States Border Patrol at the Sumas Border Patrol Station, 9648 Garrison Road, Sumas, Washington, 98295. In my training and experience, I know that the SUBJECT PHONE has been secured in a manner in substantially the same state as it was when it first came into the possession of Border Patrol Agents.

6. As set forth herein, there is probable cause to believe that a search of the SUBJECT PHONE will reveal evidence of, and that the SUBJECT PHONE is fruits or instrumentalities of, violations of Title 8, United States Code, Sections 1324(a)(1)(A)(i) (Bringing Aliens to United States at a Place Other than Designated Port of Entry), 1324(a)(1)(A)(ii) (Transportation of Illegal Aliens), and 1324(a)(2)(B)(ii) (Bringing Aliens Without Authorization to United States for Personal Gain).

AFFIDAVIT OF BPA Osburn - 2
USAO #2019R01254

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## SUMMARY OF PROBABLE CAUSE

7. On December 19, 2019, at approximately 5:50 a.m., Border Patrol Agent Lowry was parked in a marked service unit just north of the intersection of Barbo Road and Halverstick Road in Sumas, Washington, when an unknown male approached him. This person told Agent Lowry that he had seen several people near the intersection of Barbo Road and Kneuman Road, a remote rural area within 1000 feet of the border that is known for illegal alien crossings. Agent Lowry drove north to investigate the report and, as he neared the intersection, he observed a white Chevrolet Express Van backing out of onto Barbo Road. The van then began driving towards him, and Agent Lowry noticed that there were a number of passengers in the van. As Agent Lowry turned around to follow the van, he noticed that there was no one in the area where the unknown male had reported seeing several people. Agent Lowry then requested a license plate check on the can from the Border Patrol Sector Dispatch and was told the vehicle was a rental from Las Vegas, Nevada. Agent Lowry initiated a vehicle stop to determine if the passengers that he had observed in the van had entered the United States unlawfully. Agent Lowry activated his emergency lights and stopped the Chevrolet Express Van.

8. When Agent Lowry approached the van, he observed that it contained eleven passengers in addition to the driver. The driver rolled down the driver's side window, and Agent Lowry identified himself as a United States Border Patrol Agent in English and asked if the driver could understand him. The driver, later identified as BALJIT SINGH NIJJAR, responded that he could and that he was a Canadian citizen. NIJJAR then provided Agent Lowry with his Canadian Passport and driver's license.

9. Agent Lowry noticed that the van's passengers were all wearing coats and that their shoes appeared wet. He asked NIJJAR if anyone else in the vehicle had identification. NIJJAR then briefly spoke to the occupants in another language and was handed two Indian passports. Agent Lowry asked the passengers if they had immigration documents that would allow them to be in the United States legally, and NIJJAR again briefly spoke to the occupants, then indicated that they did not. At that time, Agent

AFFIDAVIT OF BPA Osburn - 3
USAO #2019R01254

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Lowry instructed NIJJAR to get out of the van, and NIJJAR and the van's passengers were transported to the Sumar Border Patrol Station for further questioning and records checks.

10. The van was transported to the Sumas Port of Entry to be scanned in the Vehicle and Cargo Inspection System. While waiting with the van at the Port of Entry, an agent conducted a search of the van and located the SUBJECT PHONE in the center console cup holders and a duffel bag on the floor between the two front seats, where they would have been within reach of the driver of the vehicle, NIJJAR. These items were transported to the Sumas Station for further investigation.

11. At 8:00 a.m. on the day of his arrest, NIJJAR was advised of his Miranda rights, which was memorialized in a video recording. The defendant stated that he understood his rights, but did not want to make a statement. The eleven passengers were questioned in their native language, and it was determined that they were all Indian nationals who had entered the United States unlawfully.

12. At approximately 8:56 p.m. on December 19, 2019, a video-recorded sworn videotaped statement was taken from one of the van's passengers, R.G.P., at the Sumas Border Patrol Station. In his statement, R.G.P. acknowledged that he is an Indian national and has never had permission to enter the United States legally. According to R.G.P., he made arrangements to have a friend pay fifty to sixty Lakh Rupees ($70,295–$84,354 U.S. dollars) to have him smuggled from India to Chicago, Illinois. He had flown from India to Vancouver, British Columbia, where he stayed in a two-room house for more than two weeks, along with others from the group apprehended in the van. In the early morning of December 19, 2019, two men drove him and the other ten aliens to the United States / Canada border. R.G.P. stated that, along the way, the aliens' cellular phones were taken from them and that, upon arriving at the border, they were instructed to follow a man across the border to an intersection where they were told to wait for a white van. When the van arrived, the driver instructed them to sit down and, a short time later, agents pulled the vehicle over and they were all taken into custody.

AFFIDAVIT OF BPA Osburn - 4
USAO #2019R01254

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

13. At approximately 11:06 p.m. on December 19, 2019, a video-recorded sworn videotaped statement was taken from another of the van's passengers, M.K.P., at the Sumas Border Patrol Station. In his statement, M.K.P. acknowledged that he is an Indian national and has never had permission to enter the United States legally. According to M.K.P., a friend of his made all of the arrangements for him to be smuggled to Chicago, Illinois, including an agreement that M.K.P. would pay fifty to sixty Lakh Rupees for the smuggling. M.K.P. stated that two men drove him, along with the other ten aliens, to the United States / Canada border and that, along the way, the aliens' cellular phones were taken from them. Upon arriving at the border, the aliens were instructed to follow a man across the border, where he showed them where they were to be picked up. When the van arrived, they all entered the vehicle, and a short time later they were stopped and taken into custody.

14. At approximately 9:54 p.m. on December 19, 2019, a video-recorded sworn videotaped statement was taken from another of the van's passengers, D.J.P., at the Sumas Border Patrol Station. In his statement, D.J.P. acknowledged that he is an Indian national and has never had permission to enter the United States legally. According to D.J.P., his father arranged to have him and his wife smuggled into the United States, to Chicago, Illinois, for ninety Lakh Rupees ($126,440 U.S. dollars). D.J.P. stated that he, his wife, and the other nine passengers were driven to the United States / Canada border by two men and, along the way, their cellular phones were taken from them. One of the men then guided them through a field, across the border, and into the United States. The man told them to wait by a light, and a short time later a van arrived. They all entered the vehicle and, just afterwards, they were stopped and apprehended by border agents.

**DIGITAL DEVICES AS INSTRUMENTALITIES OF THE CRIMES**

15. Through my training and experience, as well as the training and experience of other law enforcement officers participating in this investigation, I know that alien smugglers commonly use cellular telephones to communicate with their accomplices and the smuggled aliens to facilitate their commission of alien smuggling. As further detailed

AFFIDAVIT OF BPA Osburn - 5
USAO #2019R01254

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

below, cellular telephones may contain electronically stored data that includes contact names and numbers of coconspirators, call details including call history, and electronic communications. All of this information can be used to identify and locate illegal alien trafficking associates, identify methods of operation, and corroborate other evidence obtained during the course of investigation.

      16. Alien smugglers and traffickers often maintain records reflecting names, addresses, vehicles, and telephone numbers of associates involved in the overall smuggling conspiracy, as well as the names, photographs, and/or other identifying information of the aliens being smuggled. Furthermore, alien smugglers and their smuggled aliens sometimes take, or cause to taken, photographs and video recordings of themselves, their associates, and property that is used in furtherance of their smuggling activities.

      17. The assigned number to the cellular telephone (known as the mobile directory number or MDN), and the identifying telephone serial number (Electronic Serial Number, or ESN), (Mobile Identification Number, or MIN), (International Mobile Subscriber Identity, or IMSI), or (International Mobile Equipment Identity, or IMEI) are important evidence because they reveal the service provider, allow us to obtain subscriber information, and uniquely identify the telephone. This information can be used to obtain toll records, to identify contacts by this telephone with other cellular telephones used by co-conspirators, and to identify other telephones used by the same subscriber or purchased as part of a package.

      18. The stored list of recent received, missed, and sent calls is important evidence. It identifies telephones recently in contact with the telephone user. This is valuable information in an alien smuggling investigation because it will identify telephones used by other members of the organization, and further provides confirmation of the date and time of contacts.

AFFIDAVIT OF BPA Osburn - 6
USAO #2019R01254

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

19. Stored text messages are important evidence as they often provide key information about the user, his location, activities, and messages directly related to the smuggling activity.

20. Photographs on a cellular telephone are evidence because they help identify the user, either through his or her own picture, or through pictures of friends, family, and associates that can identify the user. These pictures may also assist in identifying or linking other individuals to the alien smuggling. Furthermore, digital photos often have embedded "geocode" or GPS information embedded in them. Geocode information is typically the longitude and latitude where the photo was taken. Showing where a specific photo was taken can have evidentiary value. This location information is helpful because, for example, it can show where the alien smugglers met and where they traveled.

21. Stored contact information is important evidence because it shows the user's close associates and may contain names and nicknames connected to phone numbers that can be used to identify additional alien smugglers or the aliens being smuggled.

## COMPUTERS, ELECTRONIC STORAGE, AND FORENSIC ANALYSIS

22. Based on my knowledge, training, and experience, I know that electronic cellular phones like the SUBJECT PHONE can store information for long periods of time. This information can sometimes be recovered with forensic tools.

23. As further described in Attachment B, this application seeks permission to locate electronically stored information that might serve as direct evidence of the crimes described above and forensic evidence establishing how the SUBJECT PHONE was used in the execution of the activity described in the Summary of Probable Cause herein. There is probable cause to believe that forensic electronic evidence might be on the SUBJECT PHONE because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

AFFIDAVIT OF BPA Osburn - 7
USAO #2019R01254

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

b. As explained herein, information stored within a digital device and other electronic storage media may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element. In my training and experience, information stored on the SUBJECT PHONE can indicate who has used or controlled the phone. The SUBJECT PHONE can indicate how and when it was accessed or used. Additionally, some information stored on the SUBJECT PHONE may provide crucial evidence relating to the physical location of NIJJAR at times that are relevant to this investigation. For example, images stored may show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. Information stored on the SUBJECT PHONE may provide relevant insight into the user's state of mind as it relates to the offense under investigation.

c. A person with appropriate familiarity with how the SUBJECT PHONE work may, after examining this forensic evidence in its proper context, be able to draw conclusions about how the SUBJECT PHONE was used, the purpose of its use, who used it, and when.

## SEARCH TECHNIQUES

24. Based on the foregoing, and consistent with Rule 41(e)(2)(B) of the Federal Rules of Criminal Procedure, the warrant I am applying for will permit imaging or otherwise copying all data contained on the SUBJECT PHONE, and will specifically authorize a review of the media or information consistent with the warrant.

25. In accordance with the information in this affidavit, law enforcement personnel will execute the search of the SUBJECT PHONE pursuant to this warrant as follows:

   a. **Securing the Data**

      i. In order to examine the ESI in a forensically sound manner, law enforcement personnel with appropriate expertise will attempt to produce a complete forensic image, if possible and appropriate, of the Samsung phone.

      ii. Law enforcement will only create an image of data physically present on or within the Samsung phone. Creating an image of the Samsung phone will not result in access to any data physically located elsewhere. However, if the Samsung

AFFIDAVIT OF BPA Osburn - 8
USAO #2019R01254

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1 phone has previously connected to devices at other locations, it may contain data from those other locations.

### b. Searching the Forensic Images

Searching the forensic images for the items described in Attachment B may require a range of data analysis techniques. In some cases, it is possible for agents and analysts to conduct carefully targeted searches that can locate evidence without requiring a time-consuming manual search through unrelated materials that may be commingled with criminal evidence. In other cases, however, such techniques may not yield the evidence described in the warrant, and law enforcement may need to conduct more extensive searches to locate evidence that falls within the scope of the warrant. The search techniques that will be used will be only those methodologies, techniques and protocols as may reasonably be expected to find, identify, segregate and/or duplicate the items authorized to be seized pursuant to Attachment B to this affidavit.

//
//
//

AFFIDAVIT OF BPA Osburn - 9
USAO #2019R01254

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## CONCLUSION

26. Based on the foregoing, I respectfully submit there is probable cause to believe that the SUBJECT PHONE contains evidence of, and is fruits or instrumentalities of, violations of Title 8, United States Code, Sections 1324(a)(1)(A)(i) (Bringing Aliens to the United States at a Place Other than Designated Port of Entry), 1324(a)(1)(A)(ii) (Transportation of Illegal Aliens), and 1324(a)(2)(B)(ii) (Bringing Aliens Without Authorization to the United States for Personal Gain). Accordingly, I seek authorization to search the SUBJECT PHONE (more fully described in Attachment A and incorporated by reference herein) for, and to seize, the items described in Attachment B.

_____
Reese W. Osburn
Border Patrol Agent
U.S. Border Patrol

The above-named agent provided a sworn statement attesting to the truth of the foregoing affidavit by telephone on this 22nd day of January, 2020.

_____
BRIAN A. TSUCHIDA
Chief United States Magistrate Judge

AFFIDAVIT OF BPA Osburn - 10
USAO #2019R01254

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970